[Civ. No. 276. Fourth Appellate District.—April 9, 1930.]

MAE C. LODGE, Respondent, v. GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION (a Corporation), Appellant.

Wakefield & Hansen for Appellant.

Harris & Hayhurst and Rue C. Gibson for Respondent.

MARKS, Acting P. J.—This action was brought by respondent to recover $350 alleged to be due under a contract with appellant. On February 6, 1927, Chris Jensen was the owner of an automobile upon which appellant had written a policy insuring him against claims made for injury to the persons of others. On the day in question his wife was driving the car, with his consent, and it was involved in an accident with another automobile driven by A. J. Cromer, in which respondent, mother-in-law of Cromer, and Mrs. Cromer were passengers. Respondent suffered injuries which came within the terms of the insurance policy.

Shortly after the accident respondent entered into negotiations with appellant through A. B. Brown, its agent in Fresno, California, in an endeavor to settle her claim for the damages suffered by her. She was postmistress in the town of Auberry, about forty miles from Fresno, and her negotiations were carried on by letter. The record shows the following communications regarding the attempted settlement. On the fifteenth day of June, 1927, appellant sent to Mr. A. B. Brown, its Fresno agent, the following telegram:

"San Francisco, Calif. 15, 3.45P.
"A. B. Brown, Care Pacific Coast Adjustment Bureau.
"Pacific Southwest Bldg.
"Fresno, Calif.
"Your telephone message Lodge versus Jensen stop Will not pay more than three hundred fifty dollars.
"WILLIAM F. MURRAY,
"Manager Claims Dept."

On November 8, 1927, Brown wrote to Mrs. Lodge as follows:

"Mrs. M. Lodge, Auberry, California.

"Dear Mrs. Lodge: Supplementing our recent conversation, I wish to advise that a further report was submitted to the company and their letter replying. was received today without much encouragement. However, they requested that I procure from you an itemized list of your claim, which indicates some little interest. Therefore, I will kindly request that you mail me the list showing the items of expense of all those involved in the accident. When this is received I will submit it and again attempt to ascertain what I can accomplish towards getting the matter cleared up. With kind personal regards,

"I am very truly yours,
"A. B. BROWN,
"Adjuster.

"P. S. Attorney Harris called on the writer stating that any arrangements that you made would be satisfactory.
"A. B. B."

On November 19, 1927, Mrs. Lodge wrote Brown as follows:

"Auberry, California, November 19, 1927.
"Mr. A. B. Brown, Fresno, California.

"My dear Mr. Brown: Complying with your request, find enclosed list of our expenses and losses. The loss and the expenses on the old car were put upon us by the accident just as squarely as the other items of loss, damage and doctors. In the enclosed list I have not included my sickness, pain and suffering, from which I have not yet recovered, and which is greater than all the rest put together.

"Very truly yours,
"MAE C. LODGE."

On December 7, 1927, Brown wrote the following letter:
"Mrs. Mae C. Lodge, Auberry, California.

"Dear Mrs. Lodge: In reply to your communication of November 19, we wish to advise that we have not neglected answering your letter, but there has been some delay because of several exchanges of correspondence with the company, and today they wrote us stating that they did not desire to increase their original offer of $350.

"In checking over your itemized list of loss, we note you have an item of $57.50 for coat and hose, $25.00 for serge

dress and undergarments, cleaners and laundry, $4.70, loss on old car $100.00. License, taxes and purchase of used tire, $28.65, which total $215.85. These items all pertain to property damage and loss of use which are not covered under my company's policy.

"Since interviewing you, we have ascertained that Mr. Jensen did not have, at the time of the accident, any insurance covering property damage and loss of use, consequently your claim for these items should be against Mr. Jensen.

"Your entire list totaled $561.85, which amount, less the $215.85, for which the company would not be liable, in any event, equals $346.00 or four dollars less than the company offered you in settlement several months ago. We are advised that the sanitorium bill amounted to $46.45, and the doctor's bill for treatment of injuries resulting from the accident, amounted to $25.00. Undoubtedly you have had other medical and hotel expenses not chargeable to the accident, and it does not seem probable that you were obliged to make seven round trips to Fresno for treatment of injuries because of the accident, as it is probable some of these trips were in reference to getting your car repaired, trading it in, or other business affairs you may have had, consequently, according to your own statement of loss, it is evident that the company was very fair in making an offer to compromise the case for $350.00.

"The writer has thoroughly thrashed all of these items out with the company, and they have given us their final conclusion, which we are transmitting to you. You will understand that in case the proposition is accepted it will be necessary for us to have releases from Mr. and Mrs. Cromer and from you, but the releases will be so worded that they will not affect any claim you may have against Mr. Jensen for property damage, loss of use, etc.

"Trusting you understand my attitude in this matter, and with kind personal regards,

"I am very truly yours,
"A. B. BROWN,
"Adjuster."

On January 31, 1928, Mrs. Lodge replied as follows:

"Auberry, California, January 31, 1928.
"Mr. A. B. Brown, Fresno, California.

"My dear Mr. Brown: The list of expenses which I sent you is correct, and my doctor's bill as stated was due entirely to the accident. But if your company will not reimburse me without suit, I must accept the loss rather than go on with further worry. On payment to me of the $350.00, as offered, I will sign a release.

"Very truly yours,
"MAE C. LODGE."

On February 23, 1928, Brown wrote to Mrs. Lodge as follows:

"Mrs. Mae C. Lodge, Auberry, California.

"Dear Mrs. Lodge: In reply to your letter of January 31st, which we promptly forwarded to the General Accident at Pine and Sansome streets, San Francisco, we wish to advise that we received their letter today stating that inasmuch as the statute of limitations had run on your case, they would not make any payment to you. Under the circumstances we will be obliged to close our file.

"Very truly yours,
"A. B. BROWN,
"Adjuster."

Upon these letters the trial court found that there was a written contract whereby appellant agreed to pay respondent the sum of $350, and rendered judgment accordingly.

The sole question to be decided on this appeal is whether or not respondent's letter of January 31, 1928, was an acceptance of appellant's offer to pay her claim. Appellant maintains that its offer was conditioned upon its receiving releases signed by all three occupants of the Cromer car. It does not appear that Mr. or Mrs. Cromer suffered any injuries in the accident or made any claim against appellant. It will be noted that in the letters to respondent, appellant used the pronoun "your" in referring to the losses and "you," in speaking of the payment, both seemingly being used in the singular. It seems clear from these letters that it was proposed to pay the money to respondent, and that it was not contemplated that any of it would be paid to either Mr. or Mrs. Cromer. In replying to these letters the respondent also made use of the personal pronoun, which is not surprising, as she was not

an attorney nor was she learned in the technicalities and phraseology of the law. In the offer of appellant it was stated that in case it "is accepted, it will be necessary for us to have releases from you and Mr. and Mrs. Cromer." There is a clear inference that the releases to be signed were to be prepared by appellant and presented by it for signature at the time the money was paid. This was not done.

■ We believe that a fair construction of the correspondence shows that respondent intended to accept the offer of setlement as made by appellant. ■ As respondent's letter was intended as an acceptance it was incumbent upon appellant to promptly communicate to her any objection which it had to the form of the acceptance, or be subjected to the conclusion that it had waived such objection. (Sec. 1501, Civ. Code; *Lockhart* v. *J. H. McDougall Co.*, 190 Cal. 308 [212 Pac. 1]; *McClintick* v. *Leonards*, 103 Cal. App. 768 [285 Pac. 351].) Appellant did not do this. It waited until the seventeenth day after the statute of limitations had run upon respondent's claim for damages, and then its agent wrote "that inasmuch as the statute of limitations had run on your case, they (the appellant) would not make any payment to you."

■ The offer was to pay money. The offeree agreed to accept money. The releases were not to be delivered at the time of the offer and acceptance. Their delivery was an incident to coincide in point of time with the payment and receipt of the money. Appellant could not expect to demand and receive the releases before it tendered the money to respondent and was ready to deliver it to her. This it failed to do, repudiating all prior negotiations, not upon the ground of any defect in form of the acceptance, but on the ground that the statute of limitations had run against respondent's claim. Under the circumstances disclosed by the record, respondent having accepted the offer in compromise of her claim, appellant should not be heard to urge an objection to the form of her acceptance for the first time in a subsequent action where it had failed to make such objection promptly, or at all, but relied upon the statute of limitations having run against her demand for damages.

Judgment affirmed.

Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 6, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 5, 1930.