[Civ. No. 854. Fourth Appellate District.—June 4, 1931.]

JOHN H. FRITZ, Respondent, v. EDGAR A. FROST, Appellant.

Edward W. Forgy, Clarke & Bowker and Dixie Dunnigan for Appellant.

Earl D. Killion for Respondent.

MARKS, J.—Appellant was the owner of a tract of land in Los Angeles County which he desired to sell for $225,000. It was subject to the lien of a local improvement assessment in the sum of $2,870.48. Respondent and W. V. Young, his assignor, were real estate brokers duly licensed by the state of California.

Early in February, 1926, appellant came in contact with respondent and expressed a desire to sell his property. He made a verbal promise to respondent to pay him five per cent commission on the first $50,000 of the selling price and two and one-half per cent commission on the balance in the event of respondent effecting a sale. Respondent interested W. V. Young in the transaction and they entered into negotiations with Heffron, McCray and St. John with the view of selling it to them. Young and respondent agreed to divide the commission equally.

On February 8, 1926, and before the signing of the option hereinafter referred to, Young interviewed appellant and told him he was working with respondent on the sale and expected to divide the commission with him. Appellant

thereupon promised to pay one-half of the commission of $6,875 to Young and one-half to appellant. On the same day appellant was paid $500 by Heffron, McCray and St. John and signed the following instrument:

"Hollywood, California,
"February 8, 1926.
"Option

"Received of Heffron-McCray-St. John the sum of $500.00 for a thirty day option from date to purchase my 77 acre tract of land on the corner of Hollywood Way and Central Avenue in Burbank. The terms shall be as follows: $40,-000.00 cash at the execution of this option and the balance of $185,000.00 payable in ten equal yearly payments of $18,500.00 each, with interest at 7% on the unpaid balance, said interest being payable quarterly.

"E. A. FROST."

On March 9, 1926, appellant was called to the office of Heffron, McCray and St. John and was told that they desired to "exercise" the option and complete the purchase of the property. The terms of the sale were discussed at length, part of the time in the presence of appellant's attorney. All questions were satisfactorily settled except one. Mr. St. John stated that the purchaser desired to have a partial release clause inserted in the deed of trust securing the deferred payments so that each acre of the property would be released upon the payment of a given sum. He suggested that each acre having a boulevard frontage be released upon the payment of $3,500, and the balance upon the payment of $3,000 per acre. Appellant refused to accept more than $2,500 for each acre released and this sum was finally agreed upon. The exact terms of the partial release clause were not agreed upon at the time, as appellant's attorney was compelled to leave the conference. These were left for future adjustment, with the duty of preparing the partial release clause and of submitting it to the other parties placed upon appellant's attorney.

Appellant, respondent, Young and St. John proceeded to the escrow office of the Hollywood Branch of the Security Trust & Savings Bank where escrow instructions providing for the sale were prepared and signed. These escrow instructions were in two parts, one signed by the seller and

one by the buyer, which was then disclosed as the Southern California Finance Company, a corporation. From these instruments it appears that the property was to be sold for the sum of $225,000, payable $40,000 on or before April 9, 1926, and $185,000 evidenced by a promissory note secured by a deed of trust on the property. The note was to provide for ten annual payments of $18,500. The payment of the $40,000 was to be made in the following manner: By the credit upon it of the $500 paid by Heffron, McCray and St. John at the time of the signing of the option on February 8, 1926; by $2,000 paid into the escrow on March 9, 1926; by the assumption by the purchaser of the local improvement assessment in the sum of $2,870.48, and the further payment of $34,629.52 into escrow on or before April 9, 1926. The sum was actually paid on April 7, 1926. In the buyer's part of the escrow instruction the following appears: "Special release clause to be placed in mortgage following property description and approved by parties to this escrow, releasing at the rate of $2500.00 per acre."

The material portion of the seller's escrow instructions are as follows: "The foregoing instructions, terms and conditions are hereby approved and accepted in their entirety and concurred in by me, and I will supply you with a deed executed by Edgar A. Frost and Anne Grey M. Frost, his wife, of L. A. of the property described . . . You are authorized and instructed to pay at close of escrow the following items for which I will hand you additional funds, on demand, if necessary; any sum necessary to pay my pro-rata of taxes, assessments, bonds, interest or rents as demanded by the above instructions of the buyer, and the following: Commission of $6875.00 to be paid as follows: $3437.50 to John H. Fritz, 5213 Lankershim blvd. Lankershim, Cal. at close of this escrow. $3437.50 to W. V. Young, 411 Holly Security Bldg., at close of this escrow as a commission."

Under date of March 19, 1926, the escrow-holder mailed to appellant a deed conveying the property in question to the Southern California Finance Company for execution by appellant and his wife. Under date of April 2, 1926, this deed was returned with the following letter written by the attorney for appellant: "I am herewith returning to you the

deed sent by you for the purpose of execution by Mr. and Mrs. Frost, without their signatures, for the reason that Mr. Frost has concluded that it is not satisfactory to him to complete the escrow. If you have incurred expense in ordering continuation of Title Guarantee, please advise, as we shall have the continuation written up and pay for the same in any event. He will also, of course, return the $500.00 paid to him for the option which expired on March 9, and I am furnishing Messrs. Heffron, McCray and St. John with copy of this letter.''

A number of other letters were exchanged between the escrow-holder and appellant and his attorney. Appellant refused to proceed with the escrow and with the sale of his property. Nowhere in the record is this refusal based in whole or in part upon the failure of the parties to agree upon the terms of the partial release clause to be inserted in the deed of trust. Appellant's reason for refusing to complete the transaction was given by him as follows: ''A. Yes, I thought they were double crossing, and I wouldn't go ahead, and I found out later in this escrow I was giving them a thirty or forty day extension, and I wouldn't give it to them. That is the only reason I refused to go ahead with that deal. They were double crossing me and they knew it. Q. By the court: I understand you, Mr. Frost, that you understood they were getting a forty day extension in this escrow? A. Yes, and they already had a thirty day extension of the option when I gave them the extension. Q. That was the only reason you did not go through, was because the time was extended too long to suit you? A. Yes. Q. That was supposed to expire on March 9th? A. Yes. Q. They asked for more time? A. No, they didn't ask for more time. I considered I was closing the option when I signed that paper in escrow; somewhere about the middle of April I refused to go ahead.''

Appellant refused to pay the commission. W. V. Young thereupon assigned his claim to respondent who brought this action to recover the sum of $6,875. Judgment was rendered in his favor and appellant prosecuted this appeal.

Appellant maintains that the clause in the seller's escrow instructions directing the escrow-holder to pay the commission to respondent and Young was not a sufficient memorandum in writing to charge him with the debt under

the statute of frauds. The facts in the case of *Coulter* v. *Howard,* 203 Cal. 17 [262 Pac. 751, 753], are strikingly similar to those in the case we are considering. In the Coulter case the Supreme Court thus disposed of this contention of appellant:

"The first question to be answered is: Did the writing signed by defendant directing the escrow party to pay to plaintiff a five per cent commission at the close of the escrow and out of the funds then due and payable to her, when taken in connection with the facts shown, satisfy the statute of frauds? It must be noted in this connection that a verbal contract of employment was made between defendant and plaintiff. It must also be noted that a written contract executed by the son of defendant was made with plaintiff and under the evidence there is no escape from the conclusion that defendant well knew of its contents and acted pursuant to its terms in signing at the bank and in the presence of a representative of defendant the escrow offer to sell above noted. These escrow provisions followed substantially the terms embodied in the writing executed by defendant's son, written authority in whom she disclaimed. In the light of these facts the provision in the escrow offer must be held to be a 'note or memorandum' of the contract which is all the law requires. (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973.)

"We agree fully with the language of *Muir* v. *Kane,* 55 Wash. 131 [19 Ann. Cas. 1180, 26 L. R. A. (N. S.) 519, 104 Pac. 153], as follows: 'The moral obligation to pay for services rendered as a broker in selling real estate under an oral contract, where the statute requires such contract to be in writing, is just as binding as is the moral obligation to pay a debt that has become barred by the statute of limitations; and there is no reason for holding that the latter will support a new promise to pay while the former will not. There is no moral delinquency that attaches to an oral contract to sell real property as a broker. This service cannot be recovered for because the statute says the promise must be in writing, not because it is illegal in itself. It was not intended by the statute to impute moral turpitude to such contracts. The statute was intended to prevent frauds and perjuries, and, to accomplish that purpose, it is required that the evidence of the contract be in writing; but it is

not conducive to either fraud or perjury to say that the services rendered under the void contract or voluntarily, will support a subsequent written promise to pay for such services.' (See, also, *Carrington* v. *Smithers,* 26 Cal. App. 460, 463, 464 [147 Pac. 225].)

"In this connection the language of *Johnson* v. *Krier,* 59 Cal. App. 330, 332 [210 Pac. 966], is in point, to wit: 'In the present case the agreement to pay commission was not reduced to writing before the rendition of the services by the plaintiffs, but after plaintiffs had procured the purchasers the oral agreement was ratified in writing and so the bar of the statute of frauds was removed.' In said case the defendant had written on the back of the contract of sale and purchase the following words: 'I hereby agree to pay Johnson and Temple a commission of $2,000 for the making of the within sale (dated and signed).' (See, also, Civ. Code, secs. 2310 and 2311.)"

Appellant next contends that as his wife did not sign the escrow instructions the agreement was incomplete and not binding upon him. It will be remembered that in his instructions appellant agreed to furnish a deed signed by himself and wife. The instructions were complete in themselves and constituted a personal promise on the part of appellant to perform. The failure of Mrs. Frost to sign can furnish no valid excuse to appellant to evade his obligations therein incurred. (*Russell* v. *Ramm,* 200 Cal. 348 [254 Pac. 532]; *Johnson* v. *Krier, supra.*)

Appellant next contends that as the exact wording of the release clause to be inserted in the deed of trust was not agreed upon, there was no completed and binding contract for the sale of the property. The duty of first preparing the form of the release clause was placed upon the attorney for appellant. He did not submit this form to the escrow-holder or the purchaser, at least until after appellant refused to proceed with the sale, if at all. Appellant should not be permitted to profit from his own neglect or that of his agents. (*Lodge* v. *General Acc. etc. Co.,* 105 Cal. App. 160 [286 Pac. 1065].) Appellant did not base his refusal to proceed with the transaction upon the failure of the parties to agree upon this release clause. We have concluded from the evidence that appellant, not because of

the release clause, but arbitrarily, refused to complete the sale. As he himself prevented the sale he cannot escape paying the commission. (*Coulter* v. *Howard, supra; Johnson* v. *Krier, supra.*)

Appellant maintains that the original option given by him to Heffron, McCray and St. John was not merged in the escrow instructions which provided for a sale of the property to the Southern California Finance Company and that therefore he cannot be bound to pay a commission under the terms of the instructions. This company was owned exclusively by Heffron, McCray and St. John and was used by them as a convenience in their real estate transactions. Under the original commission agreement the earning of the commission by respondent and Young was not dependent upon a sale to Heffron, McCray and St. John, but upon a *sale* of the property. When he signed the escrow instructions containing the direction to pay the commission to respondent and to Young, appellant was fully advised that the proposed sale for which he agreed to pay the commission, was to be made to the Southern California Finance Company. There is no merit in this contention.

Lastly appellant maintains that the findings are insufficient to support the judgment. The trial court found affirmatively on all facts sufficient to sustain the judgment, and then found that all allegations in appellant's amended answer and separate defenses inconsistent with the facts affirmatively found, were untrue. While this form of finding could be improved upon, it is sufficient to support the judgment. As was said in the case of *Turner* v. *Turner*, 187 Cal. 632 [203 Pac. 109, 111]:

"The difficulty with the appellant's foregoing contention as to the insufficiency of these findings is that the trial court did not content itself with the general findings above criticised, but proceeded to make specific findings as to the truth or falsity of each and all of the particular averments of cruelty set forth in the plaintiff's complaint, with the exception above noted, and as to these found them to be either untrue or unsustained by sufficient evidence. The generalities in the court's findings may, therefore, be disregarded and the contention of the appellant with regard

to the insufficiency of such findings to support the judgment be held to be without merit."

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 1, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1931.