[Civ. No. 9250. First Appellate District, Division One.—March 28, 1935.]

GEORGE PEAK, Appellant, v. W. C. JURGENS, Respondent.

A. Don Duncan for Appellant.

McKee, Tasheira & Wahrhaftig for Respondent.

JAMES, J., *pro tem.*—This is an action brought by the appellant to recover a real estate broker's commission which he claimed to be due him from respondent. Judgment went for defendant and respondent in the court below, on a trial; and this appeal is taken from that judgment.

The facts as disclosed by the record, or such of them as are necessary to the determination of the issues presented by the appeal, are these: The plaintiff was a licensed real estate broker. The defendant was the owner of certain lands in San Rafael, Marin County, known as the "Hotel Rafael Property". Plaintiff procured from George and Louis J. Cohn an agreement to purchase this property for the purchase price of $125,000. The agreement was in the form of a receipt to the purchasers of the sum of $5,000 as a deposit on such sale, and in which the terms and conditions of the sale were set forth with reasonable certainty. It was signed by the plaintiff as "Agents for Seller", with an explanatory clause added—"Subject to approval of Seller". Below this was the sentence: "The undersigned, hereinabove designated as the purchasers, hereby agree to purchase the above described property for the price and according to the conditions above specified." To this was attached the witnessed signatures of the Cohns, the proposing purchasers. Up to this time plaintiff had no employment or agency for defendant, and there was no brokerage contract between them. The instrument, in that form, was presented to defendant by plaintiff, and the sale was approved by defendant by subscribing to the sentence, at the end of the instrument, these words: "hereby approve the sale of said property above described upon the terms and

conditions hereinabove set forth and agree to pay to George Peak, upon consummation of sale, the sum of sixty-two hundred fifty ($6250) dollars for services rendered''. Plaintiff's action is based exclusively on this latter agreement.

The sales agreement contains the usual provisions for examination of title, and time to correct any defects, etc., likewise for return of the deposit payment if title proves invalid, or its forfeiture in case of default by the purchasers.

After examination, certain objections were made to the title, and the seller undertook to remedy the same, but the purchasers refused to accept the title as remedied, claiming the title to be still unmerchantable, and the sale was not consummated.

When the deposit was taken by the plaintiff at the beginning of the transaction, it was in the form of the purchasers' check for $5,000. This was, with defendant's approval, deposited with the California Pacific Title and Trust Company to await the result of the title examination.

After the purchasers had finally refused to go through with the sale, the seller, defendant here, brought suit against the California Pacific Title and Trust Company and the Cohns, to recover the $5,000 deposit. The issue of this latter action depended upon the validity of the title tendered the Cohns. If the title were a merchantable title, then their refusal to accept and pay the purchase price constituted a breach of their agreement which would entitle the seller to claim and retain the deposit (or pursue any other remedy he might have in the premises). On the other hand, if the objections to the title were valid, then the purchasers were entitled to recover back their deposit.

The contentions which appellant makes on this appeal are these:

1. That, having brought to the seller a purchaser, ready, able and willing to buy at a price and on the terms acceptable to the seller, and they having entered into a valid agreement of sale, the plaintiff became entitled to his commission under his agreement with the seller, endorsed on the contract of sale, regardless of whether the sale was thereafter actually consummated or not; that when the agreement of sale was executed by both parties, the agent's duties were

completed and, so far as he was concerned, the transaction was consummated.

2. That by the action of the seller, in suing to recover the deposit, he thereby stood on the contract and sought and obtained damages for its breach, appellant's contention being that in such case the broker would be entitled to his commission.

3. That the sale failed because of the failure of the seller to furnish a merchantable title, in which case the broker would be entitled to his commission.

4. Appellant also makes some point of failure of the seller to deposit the form of trust deed agreed upon, thereby affording the purchasers a ground for refusal to consummate the transaction.

These contentions we will dispose of in the order in which they are herein set forth.

1. Plaintiff's right of action is based solely upon the written agreement at the end of the sales contract. His rights may not be enlarged or restricted beyond the terms of that agreement. It is at once the measure and limit of his rights. By its terms he is to receive the sum of $6,250 from the defendant "upon consummation of sale". Appellant's contention that this means the execution of the valid agreement of sale does violence to a reasonable construction of the terms used, particularly in view of the circumstances under which they were used. It is a general rule that a contract should be so construed as to give effect to all its parts. At the time of the signing of the commission agreement, the sales agreement had already been signed and accepted, and if that constituted a "consummation of the sale", then the commission became due immediately upon the signing of the commission agreement and there could have been no purpose in inserting the clause "upon consummation of the sale", as, under appellant's construction, the sale had already been consummated. We are not unmindful of the rule that under a general brokerage contract a broker's commission becomes due when he has found a purchaser ready, able and willing to purchase at the price and on the terms agreeable to the seller and they enter into a valid sales contract. But appellant did not have a general brokerage contract with respondent. He had no contract whatever until the sales agreement had

been made and he then entered into his commission agreement with respondent, and they were at liberty to make any kind of an agreement that was satisfactory to them both. They could have agreed upon a commission to be paid at once; or they could have made it payable a year from that date; or they could, as they did in this case, make it conditional upon the consummation of the sale. They could have attached any conditions they chose. Obviously, the seller was contemplating an actual consummation of the sale itself, according to the terms of the sales agreement, when he agreed to pay this commission; and by actual consummation of the sale, he meant the doing of the things which constituted the sale, to wit, the payment of the purchase price and the conveyance of the title. Neither the reasoning of appellant, nor his cited authorities to the contrary, are convincing to us. We are of the opinion that the clause in question in the commission agreement was intended to render the payment of plaintiff's commission dependent upon the consummation of the sale in the sense indicated, to wit, the payment of the purchase price and the conveyance of the title.

2. Assuming that the contract of sale was breached by the purchasers, there were several courses open to the seller: he could tender a deed and sue for the balance of the purchase price, standing on the contract; or, still standing on the contract, he could sue for damages for its breach; or, he could treat the contract as at an end, being relieved of all obligations thereunder, himself, and retain whatever had been paid thereon. Any other course he may take is not pertinent here. In the first two instances it may be conceded that the broker would be entitled to his commission. In the third, he is not. If he sues for damages, he is enforcing the contract for his own benefit and may not disregard the rights of the broker. If he sues in specific performance, he is, in effect, forcing the consummation of the contract, and thereby bringing about the performance of the condition upon which the broker's compensation is dependent, and the broker would be entitled to recover. But, in the third instance, he is doing none of these things. He has simply stood upon the right given him by the law to retain all moneys theretofore paid by the vendees and to terminate the contract, forfeiting all rights of the vendees in the

premises. In such case, of course, the sale cannot be regarded in any sense as being consummated; and it follows that, the condition precedent to the broker's recovery not being fulfilled, the broker would not be entitled to his commission. The vendor was under no obligation to pursue the other remedies, and his election to take the third course was within his rights and could not advantage the broker in any sense.

Appellant cites with much vigor and confidence the case of *Lesser* v. *W. B. McGerry & Co., Inc.*, 121 Cal. App. 193 [8 Pac. (2d) 1058, 1060]. We are not in accord with his application of that case, nor do we concede the facts to be analogous. On the contrary, the court in that case expressly excepted from the rule therein laid down such a one as the instant case, the court therein saying: "Under the authority of *Ford* v. *Brown*, (120 Cal. 551 [52 Pac. 817]), *supra*, and *Dunne* v. *Colomb*, (192 Cal. 740 [221 Pac. 912]), *supra*, it is clear that if appellant herein had terminated the contract and forfeited the deposit upon the default of the buyers, respondents would be in no position to claim their commission." If the position of this respondent is that of one who has merely terminated the contract and forfeited the deposit upon the default of the buyers, then, under all the authorities cited, the broker would not be entitled to his commission, where, as we have held here, it was dependent upon the actual consummation of the sale, as we have construed that clause. ■ But appellant further contends that because respondent sued to recover the forfeited payment, and thereafter compromised the same by accepting a lesser sum, he thereby brought himself within the rule of the Lesser case. We find no merit in his argument. The payment of $5,000 was deposited with the title company in escrow. If, as we have said before, the contract were breached by the vendees, vendor, on his election, could consider the contract at an end and become entitled to have and retain the escrowed payment. On the other hand, if a failure of consummation was the result of a breach by the vendor, the vendees would be entitled to recover the payment. The purpose of escrowing this payment was obviously to place it within the reach of either who might be entitled thereto, if there was a controversy between the parties on that score. The suit by the respondent here was

necessary. It was not a suit to recover damages—it was not a suit in specific performance—it was not, strictly speaking, a suit to enforce the contract at all. It was one to have the rights of the vendees terminated and, incidentally, to have the depositary turn over the deposited sum to its rightful owner. Under those conditions, the broker had no interest in that deposit. It belonged to the vendor. He could do with it what he pleased. If he chose to yield part of it to the vendees, it would be no more the affair of the broker than if he bestowed the whole of it upon some charitable purpose. In principle, we can see no difference between the case of the vendor retaining a payment actually in his possession under such circumstances and his suing to recover the same from an escrow-holder.

3. Appellant next contends that even if his commission were dependent upon the consummation of the sale, as we have construed it, that, nevertheless, if the sale fails through fault of the vendor, because of his failure to furnish a merchantable title, the broker is still entitled to his commission. This would appear to be the general rule. Considerable space is devoted in the briefs in this case to a discussion of the validity of the title tendered by respondent. Without extending this opinion by a discussion of the *minutiae* of that question, we are satisfied that Jurgen's title was made good within the ninety-day period allowed by the contract of sale and that he was not in default in that respect.

4. The further contention that respondent was in default under the contract of sale by reason of certain objectionable provisions of a deed of trust finds its answer in the fact that there was no deed of trust provided for in the contract of sale and, hence, there could be no default in such respect.

The judgment appealed from is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1935.