[Civ. No. 21917.  First Dist., Div. Three.  May 13, 1965.]

RICHMOND REALETERIA, INC., Plaintiff and Appellant, v. CANTERBURY ESTATES, INC., et al., Defendants and Respondents; ANTONIO SIMAS et al., Defendants and Appellants.

[Civ. No. 22279.  First Dist., Div. Three.  May 13, 1965.]
RICHMOND REALETERIA, INC., Plaintiff and Appellant, v. CANTERBURY ESTATES, INC., et al., Defendants and Respondents.

(Consolidated Cases)

Bowman, Trant & Regalia, Orlando J. Bowman, Allen H. Trant and Clarence B. Taylor for Plaintiff and Appellant.

Tinning & DeLap, Max Wilcox, Jr., and Robert N. Sanford, Jr., for Defendants and Appellants.

Loube & Rounseville and Grant Rounseville for Defendants and Respondents.

DRAPER, P. J.—Plaintiff, as assignee of real estate brokers, sued for commissions claimed due on sale of land by defendants Simas to defendant Canterbury Estates, Inc. Hoytt is joined as a defendant on the claim that Canterbury is his *alter ego*. After trial without jury, judgment was entered in favor of plaintiff and against defendants Simas for $26,400 and defendants Simas appeal. This judgment made no disposition of plaintiff's claim against defendants Canterbury and Hoytt, and this omission was corrected by a later judgment in their favor. Plaintiff appeals from both judgments, but asserts error only in the portions thereof favoring Canterbury and Hoytt. Plaintiff states that it does not press these appeals if the judgment against defendants Simas is affirmed.

Mr. and Mrs. Simas owned 1,044 acres of land near Pinole. On May 29, 1954, they and the brokers executed a "net listing agreement" which recited that the brokers had secured a prospective purchaser who desired an option on 450 acres. Owners granted brokers the exclusive right to sell the 450-acre parcel at a price up to $1,250 per acre, of which $1,000 was to be paid to Simas, and the balance retained by the brokers as commission. Simultaneously, owners executed an agreement granting Canterbury an option to November 15 to buy the 450 acres at $1,250 per acre. If the option "for the purchase of said 450 acres" were exercised, payment of $62,500 (50 acres) was to be made promptly. The remaining 400 acres were to be paid for by November 15, 1958, but within this time limit deeds could be taken and payment made for parcels of not less than 50 acres each.

On November 9, however, two new agreements were made. By one, signed by broker, owners and Canterbury, the "net listing agreement" was cancelled, and broker agreed "to accept as full commission . . . the sum of One Hundred Dollars ($100.00) per acre purchased by Buyer under" the agreements of purchase and sale, and 10 per cent of the price of the lands other than the 450 acres purchased from Simas. The other agreement, signed by Canterbury and Simas, provided that the former "shall exercise [its] option . . . as provided in the contract of May 29, 1954," but that "payment of the purchase price of the first 50 acres" not be due until specified acts occurred. The price was fixed at $1,075 per acre, other terms were stated more specifically, and Canterbury was granted a "first refusal" as to the 594 acres owned by Simas but not covered by the option. This document also recited can-

cellation of the "net listing agreement" and the agreement of broker "to accept . . . $100 per acre as full and complete commission upon the sale of the land described in" the option agreement. "Therefore, Owner shall receive the total purchase price of $1,175 per acre for said land . . . . Of said purchase price, $1,075 per acre shall be paid to Owner herein and $100 per acre shall be paid to [broker]" as full and complete commission for the sale of said land.

Canterbury paid for and received deeds to a total of 186 acres. In the fall of 1958, a dispute between Simas and Canterbury led to complete termination of performance under the contract.

In March 1959, Canterbury sued Simas for damages for breach of contract, and Simas' cross-complaint sought to quiet title to the portion of the 450-acre tract not already conveyed to Canterbury. The court found that Canterbury had breached its agreement to purchase, but that Simas had suffered no damage. It also found Canterbury entitled to $15,000 for improvements which benefitted the property retained by Simas, and that Simas' title to the land remaining should be quieted. Judgment entered accordingly, and became final.

This action by the brokers was filed June 1, 1961, on the theory that they were entitled to commission on the entire 450-acre parcel covered by the agreement, and that both Simas and Canterbury had agreed to pay. Plaintiff had received $18,600 as commission on the 186 acres which had been conveyed to Canterbury and paid for by it. It sought $26,400 as commission upon the 264 acres not deeded to or paid for by Canterbury. The court found that the agreement obligated Simas to pay commission upon the entire 450 acres. Canterbury was found not to have agreed to pay commission, but judgment in Canterbury's favor was without prejudice to Simas' right to reimbursement from Canterbury and Hoytt.

As to Simas, the sole question is whether, under the contract, the commission for the full 450 acres was earned upon exercise of the option and execution of the agreements of November 9, or was to be earned only as land was taken and paid for by the buyer.

The May "net listing agreement" clearly contemplated that the brokers were to earn their commissions only as land was actually paid for. This is because the brokers' fees were to be realized only upon the excess of payments over $1,000 per acre. But that agreement was cancelled. The November agree-

ment provides that brokers have "agreed to accept the sum of $100 per acre as full and complete commission upon the sale of the land described" in the May option agreement. That land consists of 450 acres, and the exercise of Canterbury's option constituted an agreement to purchase all of it, as found in the earlier litigation between Simas and Canterbury. Even if the agreement be construed to require payment of commissions only as the purchase price was actually due to Simas, that due date arrived November 15, 1958. Giving Simas' contention its utmost effect, the commission agreement is ambiguous. Extensive parol evidence was admitted. Although in conflict, it does contain evidence of substance to support the conclusion of the trial court that the entire commission was earned when the option to purchase the full 450 acres was exercised, even if not due until payment to Simas fell due. It also explains plaintiff's failure to press for payment of the full commission in November, 1954, as custom of the trade. ■ Conflicting inferences may be drawn from the parol evidence introduced in aid of construction of the contract, and we are thus bound by the determination of the trial court (*Estate of Rule*, 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319]).

■ Simas relies principally upon a decision (*Peak* v. *Jurgens*, 5 Cal.App.2d 573 [43 P.2d 569]) which is asserted to be controlling. There the commission was agreed to be paid "upon consummation of sale." Because of claimed defects in title, the buyers refused to go through with the purchase, and the sale was never consummated. The case holds only that the terms of that contract did not require payment of the commission under the circumstances. The words "consummation of sale" have an established meaning (*Cochran* v. *Ellsworth*, 126 Cal.App.2d 429, 440 [272 P.2d 904]) and *Peak* holds that such a term must be complied with. No such language is used in the contract before us. Under the contract here, as construed by the trial court in light of the parol evidence, commission upon the entire 450-acre parcel has been earned.

There also is support for the trial court's view that the contract does not obligate the buyer, Canterbury, to pay commission to the broker. We need not discuss that issue, since plaintiff states that it does not press this portion of its appeal in the event of affirmance as to Simas.

Judgments affirmed.

Salsman, J., and Devine, J., concurred.