[Civ. No. 15118.   Second Dist., Div. Three.   Mar. 29, 1946.]

H. H. HAGGE, Respondent, v. JOHN DREW, Appellant.

Samuel De Groot and Aaron Sapiro for Appellant.

Buel R. Wood for Respondent.

SHINN, J.—Plaintiff, as assignee of J. A. Charlesworth, recovered judgment against defendant John Drew, as follows: $3,000 upon an account stated; $4,300 upon a promissory note, together with $498.08 as attorney's fees; also $16,875 on a promissory note, together with $1,897.61 attorney's fees; also $1,347 on account of moneys advanced and paid out for the use and benefit of defendant, at his special instance and request. Interest also was awarded on the various sums, and the judgment was for $30,699.62. Defendant appeals.

J. A. Charlesworth was a real estate broker. His services were engaged by defendant in connection with two of defendant's enterprises. One of these was the sale of acreage in the San Fernando Valley in Los Angeles County to H. H. Hagge, plaintiff herein. Plaintiff, however, in the present action is interested, so far as shown, only as the holder of the obligations for collection. The second transaction was one in which defendant leased from the Lankershim Estate some beach frontage on the Roosevelt Highway, where he operated what is known as the Variety Beach Club.

The indebtedness evidenced by the account sued on in the first cause of action arose out of advances made by Charlesworth in connection with the beach club venture, and consisted of sums advanced for defendant's liquor license, payment of rent and other bills. Plaintiff introduced in evidence a statement of account showing moneys advanced by

Charlesworth in the total amount of $3,000 for which suit was brought. This statement was subscribed by the defendant under the name of J. Drew. Charlesworth testified that nothing had been paid on the account, and defendant offered no evidence to prove that the sum was not owing, with interest.

The promissory note for $5,000 which was the subject of the second cause of action was executed by defendant in consideration of the services of Charlesworth in negotiating a lease of the beach club property from the Lankershim Estate. It was dated January 23, 1942, was payable at the rate of $100 per month, commencing May 1, 1942, and bore five per cent interest. It provided that the unpaid principal and interest should become immediately due and payable, at the option of the holder of the note, in case of default in the payment of any installment when due, and it also provided for attorney's fees in case of suit. Seven hundred dollars were paid on account of this note and the testimony of Charlesworth was that no further sum had been paid. No evidence was offered by the defendant except as to this second cause of action. The answer pleaded, and the proof established, that Charlesworth received a commission from the Lankershim Estate Company for negotiating the lease with defendant. The answer further alleged that Charlesworth represented to defendant at the time the lease was made that he was not receiving a commission from Lankershim Estate Company. Defendant testified that Charlesworth had made that representation, that he believed and relied upon it, and otherwise would not have paid a commission to Charlesworth, and he testified further that he did not learn that the Lankershim Estate had paid Charlesworth a commission until December, 1943, at which time he refused to make any further payments on the note. Charlesworth testified that he told defendant he was receiving a commission from the Lankershim Company but he did not testify, and there was no evidence, as to when he imparted that information, or that it was prior to, or at the time of, the execution of the note. The court made no finding upon this defense. ■ The absence of a finding is fatal to the judgment for plaintiff on the second cause of action. In view of the evidence, a finding upon this issue would not necessarily have been made in favor of plaintiff. ■ Charlesworth could not lawfully collect a commission from both parties to the lease transaction without disclosing the dual nature of his repre-

sentation and obtaining the consent of each principal to the payment of a commission by the other. (*Glenn* v. *Rice,* 174 Cal. 269 [162 P. 1020]; 1 Cal.Jur., p. 810, § 95.) The note was negotiable in form, but plaintiff was not shown to be a holder in due course.

The $16,875 note was given by Drew in connection with a real estate transaction in which he and Charlesworth were interested together. A consideration of the relations of the parties in that transaction is of assistance in determining the question of liability under the note. The references to this real estate venture found in the briefs and in the transcript in the present case shed little, if any, light upon the background of the note transaction. We have looked to the opinion on the former appeal, *Hagge* v. *Drew,* 27 Cal.2d 368 [165 P.2d 461], which states the pertinent facts as to the association of Charlesworth and Drew in that transaction. Drew purchased a tract of land from the estate in bankruptcy of F. W. Newport Company for $87,135, and he enlisted the services of Charlesworth to assist him in finding a purchaser for the land, in order that the same might be subdivided and sold for residential purposes. Charlesworth contacted H. H. Hagge, plaintiff herein, and Hagge entered into an agreement with defendant to purchase the land for $174,270 under a plan of subdivision. The evidence in the present case as to the transaction between Drew and Charlesworth is introduced by the production of an agreement between the two, dated March 4, 1942, which was a few days before the deed of the trustee in bankruptcy to Drew, and a trust deed which Drew executed in connection with the purchase, were recorded. The agreement recites that Drew (the party of the first part) is acquiring 140 acres of land in North Hollywood, at a price of $625 per acre, and has contracted to sell the same to Hagge; that there was established by the Hagge agreement an apparent gross profit of $87,135, which would be derived at the rate of $125 for each lot released and transferred under the Hagge contract; that Charlesworth (the party of the second part) had rendered services and would render further services and had also rendered financial assistance to Drew, and it recited, ''Whereas, it is the desire of the first party, in the event that the aforementioned sale to H. H. Hagge is consummated, to pay to the second party, a sum equal to Twenty-five per cent (25%) of the aforementioned, anticipated profits after certain enumerated deductions have been taken.'' It

further read: "It is therefore mutually covenanted and agreed by and between the parties hereto as follows: In consideration of the sum of Ten Dollars ($10.00) by the second party paid to the first party, receipt of which is hereby acknowledged, and other good and valuable consideration, the first party agrees to pay to the second party a sum of money equal to Twenty-five per cent (25%) of the profits, said profits to be computed upon the actual residential lots released to the said H. H. Hagge after the following deductions, expenditures and expenses have been deducted from the established or apparent gross profit of Eighty-seven Thousand One Hundred and Thirty-five ($87,135.00) Dollars." The agreement then provided for the payment of sums amounting to $19,-635, some of which was to go to Charlesworth, some to Drew, and the remainder for other purposes, and it provided: " (c) It is further agreed by and between the parties hereto that upon completion of the entire transaction and release of all of the said residential lots to the said H. H. Hagge and after deduction of the aforementioned deductions, listed hereinabove, there will remain an undivided profit in the amount of Sixty-seven Thousand Five Hundred ($67,500.00) Dollars.

"(d) It is further agreed by and between the parties hereto that the second party herein shall receive Twenty-five per cent (25%) of the aforementioned sum hereinabove.

"2. The first party hereby agrees and by these presents does agree to execute in favor of the second party, one (1) promissory note, in the sum of Sixteen Thousand Eight Hundred and Seventy-five Dollars ($16,875.00).

"The parties hereto further agree that the said promissory note shall be earmarked as part of this agreement." The payments above noted, which would reduce the gross profits to $67,500, were to be made from sums received from Hagge, and in addition thereto $150 was to be paid to the Security-First National Bank for the release of each lot from the lien of a trust deed. There was a provision for the application of a percentage of the receipts to the payment of certain sums which Charlesworth and Drew were to receive from the gross profits before the $67,500 was divided, but this provision is not material here. It has no connection with the $16,875 note. Following this provision, the agreement provided:

"4. It is further agreed by and between the parties hereto that when the said Security First National Bank shall have been paid in full for all of the aforementioned lots, that the

percentages hereinabove stated, shall be increased in the following manner, to-wit:

"Twenty-five per cent (25%) to the second party and Twenty-five per cent (25%) to the first party.

"5. It is further agreed by and between the parties hereto that any funds remaining in the Bank of America after all expenses have been paid, with reference to the Seven Thousand One Hundred and Thirty-five ($7,135.00) Dollars, shall be equally distributed by and between the parties hereto, Twenty-five per cent (25%) to the first party, and Twenty-five per cent to the second party.

"6. It is further agreed by and between the parties hereto that any and all funds remaining after the aforementioned promissory note is paid and the other aforementioned sums are paid, Twenty-five per cent (25%) of such funds shall be paid to the second party herein."

On the date of the agreement, defendant and Florence Drew executed to Charlesworth their promissory note, by which they agreed to pay six months after date $16,875 "as per agreement of even date." There is not the slightest doubt that this note is the one referred to in the agreement and that the agreement which we have been discussing is the one referred to in the note. In addition to the instruments, there was other evidence to this effect. There was no evidence of any other transaction between the parties involving any such note.

The answer alleged that the note was payable only in accordance with the contract, that the sum of approximately $4,300, and no more, had become due and payable under the note, and that that sum had been paid to the payee, Charlesworth, during the month of August, 1942. ■ The finding as to this defense was as follows: "That it is not true that the said promissory note was subject to a contract. That it is not true that only the sum of $4300 has become due and payable thereunder," etc. This finding has no support in the evidence. It is clear that the agreement and the note constituted a single contract and that the note was payable only in accordance with the terms of the agreement. ■ Plaintiff's rights were limited by the contract and he had no right to recover thereunder more than his percentage of profits as they accumulated. (*Rose* v. *Ames*, 53 Cal.App.2d 583 [128 P.2d 65]; *Stern* v. *Franks*, 35 Cal.App.2d 676 [96 P.2d 802]; *Martin* v. *Martin*, 5 Cal.App.2d 591 [43 P.2d 314]; *Miles* v. *Mc-*

*Farlane,* 104 Cal.App. 513 [286 P. 507]; *Clarey* v. *Security Portland C. Co. Inc.,* 99 Cal.App. 783 [279 P. 483]; *Congdon* v. *Chapman,* 63 Cal. 357; *Warman Co.* v. *Redondo Beach C. of C.,* 34 Cal.App. 37 [166 P. 856]; 17 C.J.S., p. 939, § 456.) So far as shown by the record, no profits were realized in excess of those which were divided in accordance with the agreement. There was no evidence that any more than the sum of $4,300 had become due and payable on the note, according to the terms of the agreement. There was no finding to the effect that any sum had fallen due according to the terms of the agreement in excess of $4,300. Manifestly, the judgment on the third cause of action for $16,875, attorney's fees and interest is based upon a material finding which is contrary to all of the evidence on the subject. As to that cause of action the judgment must be reversed.

■ On the fourth cause of action, the finding was that Charlesworth had advanced to defendant the sum of $1,346, at defendant's special instance and request, and that no part of the same had been repaid. The judgment on that count was for $1,347. There was ample evidence to support the finding.

■ It is contended with reference to all of the causes of action that there was no evidence that the notes and accounts had been assigned to plaintiff prior to the institution of the action. There was no evidence of a written assignment and there was but a minimum of evidence as to an oral assignment. Charlesworth was asked the question: "Prior to the commencement of this action, what did you do, if anything, with the account? A. I assigned this account to Mr. H. H. Hagge." This had reference to the account stated of $3,000. Cross-examination developed that the witness was unable to state when the assignment was made, but he did say that it was some time in the beginning of 1944. He was also asked the question on cross-examination: "Everything was assigned at one time? A. I think so. Q. Without any documents in writing at all? A. That's right." We are of the opinion that this testimony of the assignor was sufficient to support the finding which the court made that the notes and accounts were assigned to plaintiff prior to the commencement of the action.

The judgment is affirmed as to the first and fourth causes of action, and is reversed and remanded for a new trial as to the second and third causes of action. The attempted appeal

from the order denying a new trial is dismissed. Appellant will recover costs.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied April 26, 1946, and appellant's and respondent's petitions for a hearing by the Supreme Court were denied May 27, 1946.