[Civ. No. 4693.   Fourth Dist.   Apr. 20, 1954.]

ELMER MARTIN, Respondent, v. WILLIAM CHERNA-BAEFF et al., Appellants.

Siemon & Siemon for Appellants.

Mack, Bianco & King for Respondent.

GRIFFIN, J.—Plaintiff brought this action to recover a real estate commission. The complaint alleges that on November 22, 1950, plaintiff, as a real estate agent, entered into the services of defendants, at their request, to negotiate for them the purchase of a 300 acre tract of land owned by one Doberstein, at $35,000 cash; that defendants were to pay plaintiff a commission in the sum of $1,750; that plaintiff procured the agreement of all parties on the terms set forth and defendants signed a certain writing attached to the complaint as an exhibit, entitled: "Amended Buyer's Escrow Instructions," dated January 5, 1951, reciting: "We will hand you $36,750.00 ($1,750.00 of said amount is to be paid to Elmer Martin as Commission, balance to be paid to sellers in consideration for deed, which you will deliver when you obtain sufficient deed to the property herein described)"; that the sellers on the same day, signed similar instructions reciting: "I have read and approve the foregoing instructions. We hand you deed called for, which you will deliver when you can issue the policy of title insurance called for and hold for us the sum of $35,000.00. Commission of $1750.00 to Elmer Martin to be paid by the buyers as herein provided."

It is then alleged that plaintiff duly performed all the conditions of the said agreement on his part to be performed, and that $1,750 is now due and unpaid. Judgment for that amount is sought.

By answer, defendants denied generally the allegations of the complaint and specifically alleged as a defense thereto that they never, at any time, entered into any agreement in writing, authorizing or employing plaintiff as agent or broker to purchase said real estate for them for a commission or otherwise; that the writing relied upon by plaintiff was never executed by defendants or delivered to plaintiff and did not, by its terms, constitute a contract of employment; that the sum of $1,750 mentioned in the writing was to become payable only upon the purchase by defendants of the property described; that defendants did not purchase it but it was subsequently sold to defendants' son, Alex Chernabaeff, by Doberstein; that defendants did agree to purchase the property but that it was orally agreed between plaintiff and defendants that defendants would pay said commission *only*

upon the condition that plaintiff procure a loan for the defendants, with which proceeds defendants were to pay the purchase price; that defendants never procured such a loan or any loan, and the transaction failed because of such fact; that since the writing provided that the escrow was only binding until February 5, 1951, and plaintiff failed to secure the loan, the sellers, on February 5, 1951, withdrew and countermanded their escrow and sold the property to defendants' son; that since there was a cancellation of the escrow after the expiration of its time limit by reason of plaintiff's failure to complete the deal, no real estate commission was due to plaintiff.

The court made findings generally in accord with the allegations and prayer of plaintiff's complaint without any specific finding as to whether the allegations contained in defendants' answer were true or untrue.

Plaintiff concedes that there was no written agreement employing him as agent or agreeing to pay him a commission, other than the writings herein mentioned.

Section 1624 of the Civil Code provides that ''The following contracts are invalid, unless the same or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission; . . .''

The main question here involved is whether the writings here relied upon bring plaintiff within the exception noted. Originally, Doberstein listed these 300 acres for sale at $39,500 with plaintiff in March, 1950, and in April of that year plaintiff contacted defendants, who then had a lease on the property, about buying it. On November 22, 1950, after some negotiations, defendants made a deposit of $1,000 with plaintiff and he signed a receipt for that amount on a standard real estate association form, as real estate broker, reciting that defendants would pay $35,000 (all cash to seller) and subject to approval by seller. Defendants therein agreed to purchase the property on the terms therein set forth. ▆▆ Doberstein signed an attached agreement in which he agreed to sell the property upon the terms and conditions stated and agreed ''to pay said broker as commission the sum of _____ dollars.'' He then wrote across the face of the instrument: ''We will accept this deal provided the purchaser pays the commission,'' and signed his name.

Subsequently, defendants orally agreed to pay the com-

mission and said: "Let's put it in escrow." The escrow instructions above mentioned were then signed by defendants, which authorized the payment of the commission *from the proceeds of the sale.*

As between the plaintiff Martin and the seller Doberstein, there was sufficient evidence, by written memoranda, that Martin was acting as his duly authorized agent in effecting the sale. That authorization was qualified only to the extent that he would not be liable for the payment of the commission. It clearly appears from the evidence that defendants orally agreed to make that payment and this agreement was corroborated by the writing of the parties to be charged, i.e., defendants. It appears from the escrow agreement lodged in the escrow, when considered in connection with the real estate broker's receipt, the acknowledgment thereon by the parties to be charged, and the escrow instructions, that defendants, in effect, ratified the written agency agreement and authorized the agent to buy or sell the real estate for a commission, and they directed the escrow agent to pay the commission from *the proceeds of the sale.* (Civ. Code, §§ 2310, 2311.)

There appears to be a sufficient compliance with section 1624, subdivision 5 of the Civil Code in this respect. (*Coulter* v. *Howard,* 203 Cal. 17 [262 P. 751] ; *Johnson* v. *Krier,* 59 Cal. App. 330, 332 [210 P. 966].) In the Johnson case the agreement to pay the commission was not reduced to writing before the rendition of the services. It was held however, that after plaintiff had procured the purchasers, the oral agreement was ratified in writing by reason of a writing on the back of the contract of sale reading: "I hereby agree to pay to Johnson and Temple a commission of $2,000 for the making of the within sale." See also *Fritz* v. *Frost,* 114 Cal.App. 602 [300 P. 454], where a similar contention as here made was there advanced. The escrow instructions recited: "You are authorized and instructed to pay at close of escrow . . . Commission of $6875.00 (naming agents) at close of this escrow as a commission." This court, after quoting from the cases above cited, held that that memorandum was a sufficient memorandum in writing to charge defendant with the debt under the statute of frauds. To the same effect is *Corvin* v. *Smead Inv. Co.,* 115 Cal.App. 175 [1 P.2d 507].

It appears that in the instant case the written agreement of defendants to pay the commission was conditioned upon the

payment into escrow of $36,750 by defendants, the delivery of a deed by the seller, and compliance with the terms of the escrow. Defendants also claim that in their oral agreement to pay the commission to plaintiff, an additional condition was attached, i.e., that plaintiff was to secure a loan for defendants so that the purchase price could be paid to the seller in cash; that defendants were to offer as security for such loan certain described property which defendants claimed they owned (there is a dispute between plaintiff and defendants as to what property was offered); that defendants orally agreed to pay plaintiff a commission of 3 per cent for such a loan and when secured, to pay that amount, plus one-half of the real estate commission, i.e., $875, totaling approximately $1,900. It is then averred that plaintiff found a Mr. Del Papa who agreed to make the loan upon the security represented by plaintiff, and he signed escrow instructions so indicating; that thereafter defendants made and delivered to plaintiff their promissory note in the approximate sum of $1,900, and in accordance with their oral agreement, and that plaintiff accepted it; (one-half of the full commission was earned by another agent and he assigned his interest therein to plaintiff).

Although the evidence might well have supported the finding that this condition was attached, plaintiff denies that the payment of any real estate commission was conditioned on his ability to secure a loan. He testified that defendants said to him in this connection that "if I could secure him (defendant) a loan for $35,000 it would be a big help to him."

It appears from the Del Papa escrow instructions that plaintiff included as security for a $35,000 loan, the 300 acres here involved, a trust deed for $55,000 on other property, and an additional 100 acres adjoining the 300 acres here involved, and that Del Papa placed that amount in escrow.

According to plaintiff, defendants wanted to withdraw the 100 acres from that escrow because clear title thereto could not be given. Apparently, amended instructions were signed by defendants to this effect. Del Papa would not then loan the money without the additional security first indicated.

Defendants' story is that they never intended offering the 300 acres as part of the security; that when plaintiff informed Del Papa of this fact on February 23, 1951, Del Papa cancelled the escrow and refused to make the loan; that thereafter they went to plaintiff and asked for the return of the note because the transaction had failed; that plaintiff returned the note to defendants and it was torn up and plaintiff

then said: "I guess I didn't earn it." (Plaintiff testified he returned the note because defendants had made arrangements for payment of the real estate commission from the escrow.) They claim that plaintiff endeavored to obtain another loan from one Sullivan; that Sullivan demanded 8 per cent interest plus a bonus of $4,000, and defendants were unwilling to pay that sum; that they heard nothing more from Martin after that.

Defendant William Chernabaeff testified he then went to a bank to see if he could borrow money on his own account and found that the bank would loan him up to $25,000; that he then went to the escrow company and that he and Doberstein, the seller, on April 16, 1951, cancelled the escrow. The escrow agreement provided: "Time is of the essence of these instructions. If this escrow is not in condition to close by February 5, 1951, any party who then shall have fully complied with his instructions may, in writing, demand the return of his money and/or property; but if none have complied, no demand for return thereof shall be recognized until five days after the escrow holder shall have mailed copies of such demand to all other parties at their respective addresses shown in the escrow instructions. If no such demand is made, close this escrow as soon as possible."

It appears that on April 14, 1951, defendants deposited $10,000 in cash with Doberstein and on April 16, defendant William Chernabaeff made formal application for a commercial loan of $20,000 from the bank and gave as security assignments of the trust deed notes heretofore mentioned in the former escrow, and other securities enumerated in the application. The reason assigned for the loan was "purchase of farm realty." On that same day escrow instructions were deposited with another title company wherein Doberstein agreed to sell the 300 acres to defendants' son, *Alex W. Chernabaeff*, for $35,000. William Chernabaeff transferred to Alex the 100 acres adjoining the 300 acres, and on May 1, 1951, William received back a note and trust deed for $60,000 from Alex and his wife covering the 100 acres and the 300 acres in escrow. William paid into the escrow, on the purchase price, the proceeds from a $10,000 check which was received on account of some trust deed payment not here involved. From his bank account, to which the proceeds of the loan had been deposited, William Chernabaeff paid to the title company an additional $15,330.20. Title to the property was taken and recorded in the name of Alex and his wife and they farmed

the property and paid for improvements by way of a well drilled thereon costing approximately $22,000. Nothing was heard from plaintiff Martin until he discovered that on February 1, 1952, about nine months after the son had taken title to the property, the son deeded the 100 acres and the property here involved back to defendants. William Chernabaeff testified that in consideration for this he deeded his son 80 acres and cancelled the trust deed. Demand was then made by plaintiff for his real estate commission and payment was refused.

There is no direct finding on any of the issues raised by the answer as to whether they are true or untrue. As to many of these facts there is no conflict in the evidence. The only finding is that plaintiff entered into the services of defendants, as agent, to negotiate for them the purchase of the property on the terms stated in the escrow agreement; that they agreed to pay a commission of $1,750 for such service; that he secured a written agreement of the parties to buy and sell, according to the agreement; that plaintiff fully performed his part of the agreement; and accordingly was entitled to his commission.

The complaint and findings are predicated upon the theory that plaintiff fully performed his duty.

It is the general rule that a broker, in the absence of a specific agreement to the contrary, has earned his commission when, within the life of his contract, he has produced a person ready, willing and able to buy or sell on terms satisfying the contract of his employer. (*Twogood* v. *Monnette,* 191 Cal. 103 [215 P. 542].) Since the time within which the seller Doberstein was obligated to sell to defendant had expired, he having fully complied with his part of the agreement, and no buyer having been produced by the agent who deposited the amount agreed upon, the seller was authorized to withdraw his deed and cancel the escrow. Apparently this was done and no money was placed in escrow by the purchasers *out of which the commission was to be paid.* The seller was no longer obligated to sell the property to the purchasers and he was at liberty to make such disposition of the property thereafter as he might see fit. Accordingly, the transaction, insofar as the seller was concerned, was never completed nor performed at the time the escrow, agreement was canceled by him.

The evidence is in conflict as to the reason the buyers were unable to perform their part of the agreement. Defendants

testified it was because of the failure of plaintiff to negotiate a loan, as agreed upon. Plaintiff claims that such is not the case and that he was prevented from fulfilling his agreement by the actions of defendants in withdrawing certain securities and preventing plaintiff from securing a loan for them and by reason of defendants' action in dealing with the seller otherwise than through the escrow agent as originally planned. In either case plaintiff could not recover upon the ground that he furnished a buyer and seller ready, willing and able to buy and sell the property *upon the terms specified* which would entitle him to the payment of his commission from the proceeds of the escrow. His right, if any, in such case, to a commission, must be predicated upon the theory that performance was prevented by reason of the actions of defendants or that plaintiff was excused from performing his part of the agreement by reason of the claimed fraud of the defendants.

It is settled law that recovery may not be had on an allegation of performance on proof of prevention or excuse of performance. (*Barnhart* v. *Blackburn,* 137 Cal.App. 240 [30 P.2d 424] ; *Kirk* v. *Culley,* 202 Cal. 501, 506 [261 P. 994] ; and cases cited.)

No findings were made on the issues as to whether there was a condition attached to the liability of defendants to pay a commission; whether plaintiff, in fact, did cancel any agreement to pay a commission by failure to obtain the loan and by surrendering the note given for this purpose; whether the time limit prescribed in the escrow instructions for the performance of the agreement of the parties had been extended; whether plaintiff was prevented from performing his part of the agreement by the unauthorized actions of defendants; and whether a fraud was in fact perpetrated upon plaintiff which prevented him from performing. These were clearly factual questions presented by defendants' pleadings and definite findings should have been made thereon, particularly where, as here, there is substantial evidence which would have sustained a finding for the defendants on these grounds. (*Bardeen* v. *Commander Oil Co., Ltd.,* 48 Cal.App. 2d 355 [119 P.2d 967] ; *Carpenter* v. *Pacific Mut. Life Ins. Co.,* 10 Cal.2d 307, 325 [74 P.2d 761] ; *Hagge* v. *Drew,* 73 Cal.App.2d 739, 741 [167 P.2d 263] ; *Parker* v. *Shell Oil Co.,* 29 Cal.2d 503 [175 P.2d 838] ; *Powell* v. *Johnson,* 50 Cal.App. 2d 680 [123 P.2d 875].) Accordingly the judgment must be reversed.

Since the plaintiff pleaded full performance of the agreement and since the action was tried, over strenuous objections of defendants, upon the theory that plaintiff was prevented from performing his agreement by reason of nonperformance of defendants and by reason of their fraud, on a retrial, the pleadings may be amended accordingly and findings entered in accordance with the pleadings and evidence produced.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.