[Civ. No. 32562.   Second Dist., Div. Three.   Apr. 25, 1969.]

MICHELE B. MONTELEONE, a Minor, etc., et al., Plaintiffs and Appellants, v. WALDO D. ANDREWS, Defendant and Appellant.

Franklin W. Peck and Edward D. Neuhoff for Defendant and Appellant.

Frank W. Doherty for Plaintiffs and Appellants.

COBEY, J.—These are cross-appeals. Defendant Andrews appeals from a judgment against him in favor of the plaintiffs, the Monteleones, for $10,500 in unpaid rent and $1,957.44 in itemized damages. He also appeals from the order denying his statutory motion to vacate the judgment. Plaintiffs appeal only from that portion of this judgment which allows them but $50 as the value of certain control panels which were wrongfully removed from the leased premises.

### ANDREWS APPEALS

The only question presented by Andrews' appeals is whether a lessee, over two years after his entry into possession of certain real property belonging to minors under a guardianship and leased to him for five years by the guardian of their estates, may disaffirm that lease *on the sole ground* that prior to the execution of the lease the guardian failed to obtain a court approval therefor. We believe not. Like counsel, however, we have been unable to find any precedent for this conclusion in California or elsewhere that we regard as controlling.[1]

In the first place, it was not clear at the time of the making of this lease in 1961 that such prior court approval was required. Although court approval of the terms of a lease of guardianship real property had long been authorized by Pro-

---

[1]Counsel for the Monteleones have cited us the 1928 decision of the Arkansas Supreme Court in *Hamilton Coal & Coke Co.* v. *Johns,* 175 Ark. 1146 [1 S.W.2d 812]. In that case the court affirmed a judgment for an administrator against a lessee in a suit to recover the minimum royalty on certain coal lands of a decedent's estate under a five-year lease entered into without the requisite prior court order where the lessee had paid such royalty for two years and had been in possession of the property for three years. The court based its decision, however, not upon the validity of the lease itself, but instead upon the existence of a tenancy relationship between the parties.

bate Code section 1538.5, the mandatory requirement of prior court approval of such leases contained in the immediately preceding section, section 1538, had been construed, prior to its amendment in 1967, as applying only to leases of mining claims and other real property worked as mines. (See 24 Cal. Jur.2d, Guardian and Ward, § 92, p. 281.) In 1967, however, the Legislature added to the Probate Code section 1538.6. This section expressly exempted from the mandatory prior court approval requirement of the just mentioned section 1538 month-to-month leases of guardianship real property and all leases of such property in which the rental did not exceed $250 a month and the term did not exceed one year. In view of the breadth of the coverage of this exception we must now assume that the mandatory prior court approval requirement of section 1538 has always been equally broad. (Cf. Annot., Guardian—Power to Lease, 6 A.L.R.3d 570 (1966).

But it does not follow from this assumption that a valid power of disaffirmance of a guardian's lease *solely* for non-compliance with this requirement was thereby created in Andrews. The lease made him nothing more than an obligor of the guardianship estate and in attempting to disaffirm the lease he was acting as a stranger to the estate and solely in his own interest. We believe that the only persons in whom a valid power of disaffirmance was created by the guardian's failure to obtain prior court approval of the lease were those beneficially interested in the guardianship estate, namely its wards and creditors. In other words, the power of disaffirmance on this ground existed only in those classes of persons for whose protection the entire machinery of guardianship was established. (See 5 Bancroft's Probate Practice (1950), § 1271, pp. 3-4; California Estate Administration (Cont. Ed. Bar), § 40.18, p. 1041.)

That Andrews, as lessee, was not a person interested in the guardianship estate and thereby protected by the statutes requiring the guardian to act in certain ways in order that the estate might be adequately protected, is shown by the circumstance that he was not one of those entitled to notice, special or otherwise, when a court order was eventually obtained for the leasing of the guardianship property to him. (See Prob. Code, § 1600.) This is also the situation in the analogous case of a personal representative's lease of real property belonging to a decedent's estate. (See Prob. Code, §§ 1200, 1202.)

There is nothing in prior California decisional law militating against the conclusion we have reached. It is true that in

*Texas Co.* v. *Bank of America etc. Assn.*, 5 Cal.2d 35, 38 [53 P.2d 127], it was held that a lessee under an unauthorized lease of a decedent's property could recover money paid by it to the personal representative for the execution of the lease where it had never been able to gain possession of the leased property. But in that case there was a complete failure of consideration for the money at issue. This did not occur here. Furthermore, in that case it was expressly recognized that the lessee was not "a person interested in the estate." (*Texas Co.* v. *Bank of America, etc. Assn., supra* p. 46.)

Under our analysis it is immaterial that the term of the lease under review extended beyond the times when each of the two minors reached her majority and that during the term of the lease and following receipt of Andrews' notice of disaffirmance the plaintiff-guardian obtained from the guardianship court an order authorizing, approving, and ratifying the lease.

### THE MONTELEONES' APPEAL

The Monteleones attack the $50 valuation placed by the court upon the control panels which were removed from the leased property in violation of the lease. This valuation was based upon the testimony of David Graham, an appraiser, called as an expert witness on valuation on behalf of the Monteleones. However, Graham also testified in effect that if the phrase, "control panels," in the lease were interpreted to mean not merely the plywood panels themselves but also the furnace temperature recording and regulating instrumentation mounted on them, they would then be worth $5,500. Thus the essence of the dispute between the parties on this point was the meaning of the phrase, "control panels," in the lease.

The lease was drafted by the guardian, Michael Monteleone, and his attorney. Therefore, any and all uncertainties in its meaning should be construed against the Monteleones. (See Civ. Code, § 1654; *Bank of America etc. Assn.* v. *Moore,* 18 Cal.App.2d 522, 530 [64 P.2d 460], hear. den.; *Cooper* v. *Mart Associa*tes, 225 Cal.App.2d 108, 116 [37 Cal.Rptr. 145], hear. den.) If the Monteleones wished to have the ban in the lease against the removal by the tenant of electrical conduits, switches and wall control panels from the leased premises apply to the furnace temperature instruments as well as to the panels on which they were mounted, they would have been well advised to have used in the lease the phrase, "controls and panels," instead of the phrase, "control panels."

The judgment is affirmed in its entirety. The order denying Andrews' motion to vacate the judgment is likewise affirmed. The Monteleones and Andrews shall each bear their respective costs on these appeals.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied May 14, 1969, and the petition of the defendant and appellant for a hearing by the Supreme Court was denied June 18, 1969.